The next case for argument today is McCottrell v. White, 1722-95. We'll hear from Mr. Kasdan. May it please the Court. Daniel Kasdan, appointed counsel on behalf of appellants. In this case, two officers fired shots into a prison cafeteria. The shots ricocheted and hurt my clients and some other prisoners too. Internal Affairs already found that the shots were not justifiable, unreasonable, and excessive. The only question on appeal is by how much? Was it a good faith effort or was it malicious and sadistic? The Supreme Court has pointed us to a five-factor test that should be used to consider these kinds of cases. Using summary judgment facts, every one of those points to the guard's liability. In addition to the internal report that said it was not justifiable, unreasonable, and excessive, we also have a third-party inmate who said that he was hiding under a table, and then once it was safe, he came out. And then the guard shot, and then he was hit. So the objective sort of indicia on the floor suggests that they shot way after there was any reason. But looking through the five factors, we can see this easily confirmed. First, the first Hudson-Whitley factor is the amount of force applied. It's undisputed. The District Court found firing a buckshot is a significant amount of force. So that definitely favors us. The next is the need for the application of force. As this Court said in Fillmore, if a fight is over, there is no need for use of force, so force is per se malicious. So what do we have? We have, as the District Court noted, well, the District Court says Clay says both fighting inmates were already in handcuffs. Actually, he said that they were not only being handcuffed, they were already handcuffed. So that certainly suggests the fight was over. So even the guards, who we know lied about some other things, here admit that, at least at this point, that Dent and Brown, the two fighting inmates, were separated. We have, as we mentioned earlier, the inmate who hit under the table. We have Mr. McCottrell saying the disturbance is basically over. That's at S.A. 277. And we have Lieutenant Mayer saying that the officers were on the floor, not the defendants here, were using pepper spray, and pepper spray was effective. So at summary judgment, this Court should find that the fight was over, in which case the shots are per se malicious. We also have, even if we were to credit the guards that the fight wasn't completely over yet, certainly it's an unreasonable response to fire a shot into this situation. So the fight, as they call it, was without fists, the District Court said. I just have a question that was unclear to me. So it seemed clear to me that the shots were fired after the inmate stopped struggling, but it wasn't clear to me whether the inmate was continuing to struggle with the guard at that point, or whether they had both been completely subdued. So there's conflicting testimony on that. So I think that Mr. Clay said at S.A. 219 that everything was over. The guards claim that one inmate was still struggling. So if you credit that they were both, that everybody's in handcuffs, then there is no fight. So then it's definitely over. I think at summary judgment, that's what you should do. But even if you don't, there was never really a fight, right? As the District Court said, there were no punches which I think the District Court in Gomez in a different case said, wrestling suggests that there's never need for such a violence as a shooting. Again, and there's a lot of testimony that there was scuffling or whatever. We know that there was never, no weapon materialized, and nobody was really hurt. So what we have in response to that is firing a shotgun when there, even if one inmate was resisting, still there was still, it was not that serious of an issue. And I think this court in Lewis said, not every example of inmate resistance justifies the use of force. And that I think applies directly on point here. We go to the fourth factor, the threat reasonably perceived. A lot of the analysis is the same. I want to flag for this court that in the Eco case in the Fourth Circuit, the court said that the longer a fight continues without anything really blowing up, the more guards should assume that nothing will happen. Because that sounds like an awful lot of hindsight, I have to say. I mean, it could be, but it could be if they're 25 seconds and nothing's happened very seriously, then why at 25 seconds be like, this is out of control, I need to start firing into the ceiling with a chance of ricochet. MS. GOTTLIEB Mr. Kasdan, when the internal affairs investigator concluded that the officers used excessive force, on what standard was that conclusion based? It was not based on an Eighth Amendment standard. What was it? I mean, was it based on anything more than a violation of an internal policy not to fire a warning shot if the fighting inmates have already been separated? MR. KASDAN I agree. It's not, they weren't analyzing the constitutional question, but certainly their findings are relevant to what a reasonable jury could find, which is that if they're saying it's excessive, maybe a reasonable jury would come to that conclusion, too. And like you said, it's not 100 percent the same question. I agree with that. I don't want to oversell it, but it does, sort of, we're at summary judgment, which is, I'm not asking you to reverse a district court, I mean, a jury finding against that. MR. NEUMAN What do you think the video shows? The district judge looked at the video and reached some conclusions about it. I wonder what you think it shows. I looked at it, and I have a hard time making heads or tails out of much of it. MR. KASDAN That's where I'm at. I don't understand what's going on. And, you know, I find confusing also, and there's evidence in the record, we cited in our blue brief, the seconds might not even be seconds. I don't know what I'm looking at. I'm like, there are blurs, then there are blurs separated, then there are more blurs. MR. NEUMAN Is there any witness testimony in the record explaining the video? So they have Mr. Clay, I think, they have in the deposition, in his deposition, they walked through it, and probably Mr. McConchell, too. I think they showed it to them, and so the images that the government puts in the back of the red brief, those came from the deposition. So they did walk through those videos, but I find it very difficult to see much, and it's troubling at video and context conclusions, but here the question is, is the video susceptible to multiple interpretations? I think that this video I looked at, I just, I can't see much there, and so I don't think it, I don't think it, I think we're back to what people said happened, and the video doesn't really change that. The only other point I really would like to emphasize is the fifth factor, which is the effort to temper the severity of the response. So defendant White testified that he was told that a shooting in the ceiling instead of shooting in the shot box, when the shot box is made to be shot at, he was told that that would reduce ricochet. We challenged that as hearsay, and the district court ruled against us, saying it's not being asserted for the truth of the matter asserted, it's just being used to show what he may have done, but one of the problems with hearsay is it's not always the most credible evidence, and that's a problem that remains, even if it's admissible, at summary judgment, she shouldn't have been crediting the testimony that he had been told that, given, especially given, A, that we know he's lied already about what happened in that fight, and B, it seems borderline preposterous to say somebody would believe that a shot box isn't meant to be shot at. A reasonable jury could say, you know, I think that you didn't care or you weren't trying to temper your severity, so that's just another fact. So with that, I mean, I think those are the five factors, and I really think every one of them should be, at summary judgment, viewed in our favor, but certainly in combination. I'm going to save the rest of your time for rebuttal. I would like to turn it over to you, Your Honor. Good morning, Your Honors, and may it please the Court. Assistant Attorney General Caitlin Buell on behalf of Defendants Appellees. The Eighth Amendment protects prisoners from force that summary judgment showed that the defendants fired buckshot following the prison cafeteria fight to restore order, rather than to intentionally, maliciously, and sadistically harm the plaintiffs. Because the record evidence showed that the defendants perceived a threat to themselves and other inmates in the cafeteria, acted within a one-minute time frame that was chaotic, and tempered the severity of force by aiming away from the eating area, this Court should affirm the Circuit Court's judgment. Let me tell you my problem with the argument, Ms. Buell. If we were to adopt this generalized standard that the defendant suggests, that prison is dangerous, a fight might develop quickly into something else, an inmate might have a weapon, and so extreme force is justified, then every shoving match will turn into a justification for deadly force. When we look at the facts here, how is this situation anything at all like Whiteley? You compare a brief shoving match to a prison riot with hostages. What sort of disturbance justifies deadly force? A verbal argument? A shoving match? A single punch? All of the above? I don't think that it would be just a verbal match. This wasn't a verbal match. This is very different than Lewis v. Downey, where there was no sort of threat of aggression, or any other disturbance, and the guards in that case were acting in a very punitive manner by tasing someone after he refused to stand up. Here we have individuals who are actually placing hands on one another, tussling, wrestling in the line. You have individual inmates who are standing up. There is testimony in the record through the incident reports that different inmates were moving around. It's also a very noisy situation, and thus this firing is able to kind of bring immediate order to the cafeteria so that it doesn't escalate. And Whitley v. Albers determines that prison officials are in the best position to be able to determine what prison security measures are needed in order to ensure that something doesn't blossom into the sort of riot that you have in Whitley. You see, if we credit the plaintiff's testimonies as we must at summary judgment, the shots were fired after the inmates were not only separated but handcuffed. And I didn't see the defendants attempting to apply the Supreme Court's five-factor test to those facts anywhere in the briefs. I mean, would you like a chance to do so now? Absolutely. All of the five factors are satisfied here, but I would like to point out that even assuming the fight was over, the defendants are still entitled to summary judgment, because just because the fight is over doesn't mean that the situation is over. The appellants would have you believe that immediately after the fighting stops, everything is fine. And that wasn't the case here. The video evidence shows that individuals were still moving around. It was clearly still a very tense situation. And this actually goes to one of the factors, which is the prison officials' perception of the need for force. And both state defendants stated in their affidavits that they perceived there was still an ongoing threat to their own safety and the safety of other inmates. There was no lying by them. Their affidavits stated this, and in their incident reports, they believe that staff had separated fighting inmates, said Williams, but he thought that they were still in danger, so he fired the warning shot. He saw that other inmates were moving from the chute, or that although staff had come in to separate the inmates, he fired the warning shot because he felt that the staff was still in imminent danger. Now look, one officer deliberately chose to fire at the ceiling instead of the shot boxes that had been installed for the very purpose of reducing injury by ricochet. Why could a jury not infer from that deliberate choice that the officer simply didn't care where the buckshot went? How can we credit his self-serving explanation on summary judgment when we have contrary evidence regarding the presence and purpose of the shot boxes? Do you know what the ceiling was made of? Was there some rational reason to think that the buckshot would not ricochet off the ceiling? Your Honor, that's not in the record, but I have asked the Department of Corrections if you'd like me to give you that information. Well, if it's not in the record, we have a... Exactly. Counsel, can I ask you a question about this ricochet thing? So the guards, the other guards were on the floor too, right? They were. So presumably the shot to the ceiling endangered them as well, if it would ricochet or no? They believed that firing towards the ceiling under their perception, they were aiming towards the shot box and the one... No, I understand that their perspective and their testimony, they thought that this was going to be safe, that they didn't think it was going to ricochet. I'm asking, it did ricochet. So let's assume that... I'm trying to get at the question of if he did it maliciously without caring where it would go, did that endanger the officers as well as the other prisoners on the floor? It would have endangered everyone if he was doing it carelessly, but he was not. He was doing it in order to restore order to the prison itself. And it was his belief that it was not a perfect action. It may have even been negligent, but negligence doesn't cross that line into a constitutional violation. We simply don't have the case here that's akin to this court and other courts' Eighth Amendment cases in which you have almost a punitive action by the guards. The appellant has cited a lot of cases where guards have gone back for retaliation and punishment after they failed to respond to the directives of staff. And they're very different from the case described here when you have staff that's responding to a very fluid and dynamic situation that's still ongoing. And it has the option of potentially ratcheting up just because it was starting to calm down doesn't mean that it was completely over and everything was extremely calm. This isn't the case of Lewis versus Downey, where there's no threat of aggression. This isn't the where the inmate was completely 100% removed from the situation. And the guards were then throwing water at a dehydrated inmate's feet. And this isn't the case of Downey versus Allen, where there was pepper spray that was sprayed and then guards taunted him and parodied his choking. This was a situation where guards were truly acting to quell a disturbance so that it did not rise to the level of a prison riot. We are one step down from Whitley. And so that is why defendants, in the very least, should be entitled to qualified immunity in this case. Because Whitley shows it's clearly established that prison officials who have the ability to fire a warning shot when they're faced with a prison disturbance, that they're acting to quell this disturbance, that firing a warning shot was not constitutionally acceptable in this prison situation following a prison fight. And I'd also like to touch briefly on the video evidence. The video, it is a little difficult to look at. However, Mr. Clay in his deposition did walk through the video evidence. He describes the events as happening in under a minute, whereas Mr. McCutchell said it happened in two to three seconds. So we're really working within a minute time frame. And while the action might not have been perfect, it was certainly done in order to quell a prison riot. And excuse me, not a riot, a prison disturbance. And thus, if this court has no further questions, we would ask that this court affirm the district court's judgment. Thank you. Thank you, Ms. Buell. Mr. Kasdan, rebuttal. I have a couple very quick points. The first is my friend on the other side has emphasized the defendant's perception. I just want to flag that in Hudson, first of all, the perception is just one factor, but the court doesn't just say what they perceive. It says the threat reasonably perceived by the responsible officials. And the reasonable encompasses all these other factors about how long that fight had gone on, how serious it was. Second of all, in terms of the amount of time they had, I just want to clarify for the record, the three seconds was how long it took the guards on the floor to get there. The one minute testimony was how long it took till the shot happened. So just to be clear, there's no question that they fired within three seconds when it was very difficult to figure out what was going on. In terms of the danger to the guards, and I don't know the answer, I just want to flag that the people who were hit were 50 feet away. So it may well be that the shot had a chance of getting away from where the actual disturbance was happening, but to endanger prisoners such as Mr. McCosh on the floor. The last one, I just want to go back to a point about what to do with the evidence. I just want to flag for this court the case Combs v. Wilkinson, which we cite, which is a Sixth Circuit case in 2002. And there, there's a riot, guards come in, and the question is whether the guards had done enough before they went in to make sure that more harm wouldn't come than was necessary. Obviously, there's a riot, there's going to be some force that's used. And the court relied on a report that said that there was insufficient supervision. And again, that was just to reverse summary judgment. But like our case, even if the report was just addressing the prison standards, I was there, it's certainly very probative of what a jury could find. With that... Thank you very much, Mr. Kasdan. Thank you, Your Honor. And you and your firm have the thanks of the court and your client for the services you've provided to both the court and the client. And we also thank the state's attorneys for able representation as well. The case is taken under advisement.